We'll hear the next case, Peralta v. Quintero When you start talking, the clock will start ticking. Thank you. May it please the Court, John Downing on behalf of the defendants. This is a very important case, Your Honors, because more and more we're seeing these surgeries being done in auto cases, and the Court of Appeals has held that it's a ripe and rampant area of abuse. The magistrate judge, whom we did not consent to, we argued for a jury trial, but due to technicalities we couldn't get a jury trial, made clearly erroneous, clearly erroneous I'm sorry, I missed that one too. You were deprived of your right to a jury trial? Yes, yes, but we did not appeal because it was a timeliness thing, and that was that. I thought the district court said that months and months had passed without a jury trial request, and therefore you went forward. Yes, I'm not appealing that, Your Honor, but Judge Moss's decision was clearly erroneous. I just want to make sure that you did consent to the proceedings before the magistrate judge. Otherwise you would have been in front of the district judge. Oh, once it was ruled that we were going to have a bench trial, yes, we consented to the magistrate judge, yes. The judge failed to recognize the law of New York. He did not apply the rules that you must show objective evidence of an injury, you must apply the rules regarding whether it's a significant injury, and you must apply Are you talking about the serious injury issue? Yes, and you must apply the cessation of treatment rule, which is Wait, let me ask you about that. The serious injury, are you appealing that as a question of law or a question of fact? Both, Your Honor. I'm going to ask you that as a question of law, because if it's a question of law, our standard of review is different. You didn't tell us what the standard of review is in your brief. How was it preserved as a question of law? I see you made a motion, but the decision was reserved, and I'm not sure that the findings dealt with it as a question of law. And if it's a question of fact, obviously you have a much harder time persuading us that there was no serious injury. Well, I hope to do both, Your Honor. The judge, the ruling, as you go down the ruling, it has clearly erroneous findings of fact and law. He bases at page 3 the decision based upon what a police officer would have done, that the officer would have noted fraud if he thought there was fraud. He bases it on the officer. What's the error of law? The error of law is the failure to apply the law of objective proof of a serious injury, objective proof, and objective proof of causation. This is a gentleman who has no hospital. MRI. There was an MRI, and the plaintiff's expert testified about stenosis at the L4, L5 vertebrae. Isn't that objective? Well, stenosis is narrowing. Is that not objective evidence? It is not objective evidence. The judge himself at page 6 said that Dr. Rafi agreed with the defense experts that there were no herniations, no protrusions. And, in fact, Dr. Rafi admitted you can't ever tell the age of these abnormalities shown on the films. And yet Mr. Peralta underwent serious surgery and had a rod implanted in his back. Isn't that correct? He had a rod placed on the right-hand side. The doctor had planned to do it on the left, and when he was asked, did you see the need for it, he stopped doing the left because Does it at least suggest that if the plaintiff was willing to undergo, if Mr. Peralta was willing to undergo a serious back surgery and have a rod implanted in his back, that he had been injured at some time? No, Your Honor. It's very common, as this court has recognized, that people bolster their cases. Doctors, lawyers bolster cases for various reasons. And sure enough, Rafi was under indictment for insurance fraud. He was under He was acquitted, right? He was acquitted later. But at the time, but this is not a jury trial. The judge recognized that the doctor had been under indictment for insurance fraud for skimming patients' charts at Nassau County Medical. Is it even admissible that he was indicted considering he was acquitted? And it was something wholly unrelated to what you're accusing him of here? Is it even valid impeachment evidence? Well, the judge accepted it and listened to it, but It sounds like we're back into clearly erroneous facts, but Judge Chin asked you about what was the legal error here. Again, Judge Moss completely ignored the requirement of objective proof. You cannot have subjective statements throughout the first four months of treatment and then have nine months of absolutely no treatment, no medication, but heavy-duty work activities. And then a doctor who's clearly under indictment performing, inserting something on the wrong side. All the complaints are at the left. The doctor recognized, the judge recognizes that and then ignores it. He ignores the requirement of objective proof. There is no objective proof. There's no hospital. There's no bleeding. There was no nothing. You had a gentleman who was working in very rigorous jobs, disproving the back injury. And when you talk about whether there was a need for this judge afterwards, no atrophy, no weakness. He's doing all the sports. There is no evidence of any injury before the surgery or after the surgery. I'm listening to your argument, and it strikes me as a case of be careful what you wish for. You removed this case to federal court, and you waived your jury, and you were arguing this in the appellate division that has plenary review of the facts. You might be on decent ground because they could substitute their own judgment. We're talking about clearly erroneous here for the things you're talking about. Well, as I say, Judge, there are ten points in the judge's decision where he's incorrect. He said the judge states at page 6 that the plaintiff went to Dr. Raife after four months. He went to Raife after 13 months. That was in the first decision. That was amended later. Okay. Right? He corrected it in his final definitive decision. I believe you're right, Your Honor. The judge also stated that the surgery stabilized the left side. That's absolutely incorrect. The rod was placed on the right-hand side. The judge stated that. That prompts me to ask why it was that you included the uncorrected opinion at the back of your brief as opposed to the one that was final, that was issued and prepared by the district court. Is there a reason for that? No. I thought that both decisions were included in the record, Your Honor. I apologize. It was the second one that was corrected that had the correct dates and so on after the transcript had been obtained that the district court relied on, and yet you included the other one, right? I'm not sure which one. It was unfortunate. I believe it's correct. And the judge relied upon a chiropractor, Mandrakia, who never testified, whose record was never testified to. There was just no basis for his award. There was no proof of any objective injury or objective limitation. Thank you. You've saved some time for rebuttal. May it please the Court, Michael Zhu, Pollock, Pollock, Isaac, and DeCicco, on behalf of the Plaintiff Appellee, Alvin Peralta. I think the panel hit the nail right on the head with respect to standard of review here. If we're talking about . . . You hit the nail on the head, but there are some funny things about this case, are there not? I mean, the long treatment gap here. If I were trying this case, perhaps I would have come out differently. If you've got protection here, it's because we're reviewing factual determinations. Well, the gap in treatment was explained by Mr. Peralta at trial, where he said that after undergoing four months of physical therapy at Davidson Medical, he just felt that it wasn't improving, it wasn't helping him, so he stopped going. But he didn't stop treatment because he was given an electrostimulation machine, which he had with him, and he testified that he used it every day for a year and a half, after it was given to him. He was taught how to do home exercises and stretching exercises. Electrostimulation, that's the machine you get at Brookstone that you attach these pads to your back and plug it into the wall for 10 minutes a day? Well, yes, but it says that as he was using it, it helped relieve some of the pain, which is what he continued . . . I mean, you don't continue use of something that doesn't help, which is what happened here. And eventually he said that he tried everything that he could do himself, and it just wasn't helping, and that's when he finally went and found Dr. Rafey. And Dr. Rafey testified that there's nothing wrong with that gap because he complained of pain, swelling and tenderness to the back. He had treatment. It didn't help. And when he came to me, he had the same complaints of pain and swelling and tenderness. Was it that same pain that Dr. Rafey then prescribed OxyContin for? Yes, and other types of narcotic medication. So the gap in treatment was explained here by both the plaintiff and by Dr. Rafey, who said that it was consistent because at 281 of the record is where Dr. Rafey goes into testimony with respect to the conservative treatment not helping. And is that consistent? And he says yes because then he comes to me, and he's still continuing to have these problems. What is the objective evidence of a serious injury? There's plenty. There's the April 2010 MRI that showed neuroforminal stenosis. There's Dr. Rafey's objective orthopedic exams that he conducted, the positive straight leg test, the positive Bowman's. Could that have been an old issue as opposed to recently created? Not according to the radiologist who reviewed the MRI and Dr. Rafey's testimony, who said that this was not a degenerative condition. The plaintiff testified that he never injured his back before. He never had treatment in his back before. And was he age 23? He was only 23 at the time, yes. And so if you're going to talk about degeneration, forminal stenosis, which is the narrowing of the neuroformin, doesn't really occur at people with young age. So here there's no evidence presented by the defendant that this was a degenerative condition. And Dr. Rafey, upon treatment, didn't dive right in and recommend surgery right away. He had five clinical visits that spanned between the first visit and when the surgery was done in July of 2012. And in each of these visits it was documented in Rafey's report of objective orthopedic positive findings, limitations of range of motion using a goianometer to measure the degrees of difficulty that he had. And so that, with the positive orthopedic exams, that's all objective medical evidence. What are we to make of the evidence from the collateral source hearing that he has not received any treatment since March 2014 or since early 2014? You can't refer to that. Can't refer to that. Because the evidence presented to the judge at trial included none of that, and his determinations and findings of facts were not based on evidence that was produced at the collateral source hearing. So as far as the propriety of Judge Moss's determinations and findings of facts, first of all, they're not made clearly erroneous by the evidence that was produced at the collateral source hearing, and secondly, we believe that that's the whore's of the record because that's not what Judge Moss referred to and reviewed as he was making these findings of facts during the trials. You may be right, but it made Judge Moss a little uncomfortable when he learned about that. But that's not non-evidence that there was no serious injury. Look, I mean, people do get better. And there's a First Department appellate division case, Paulino, which I cited in my brief that says that, look, just because you don't show an immediate injury doesn't mean that there's no serious injury, and just because you get better. No immediate injury, and then after the award you've got no injury. So you happen to have an injury when you need to have an injury for the case. Again, just because you don't seek medical treatment doesn't mean that you don't have an injury, which is consistent with. And couple that with the fact, what do you do about this? Did Judge Moss abuse his discretion for not drawing an inference from the fact that, given how hotly there was a dispute about whether an accident had even occurred, your client destroyed the car? And so there could be no examination of the car? I'm sorry, I didn't catch that. You went in a completely different direction of where I thought you were going to go. Wasn't the car, in fact, spoliated so that no one could examine it to see if, in fact, there was an accident? Well, Mr. Peralta testified that it got to the point where he couldn't drive the car anymore. The airbag was still hanging out after the accident, so he ripped it out. And it was an old car. It was a 1980, I believe it was a 1983 Honda Accord that he was driving. So there's nothing- He's got a lawsuit. But the fact that he destroys the car doesn't, again, we're going back to whether there was objective medical proof of a serious injury. I'm moving on to the issue of was there, in fact, an accident at all? Oh, then you rely on the objective testimony of the police officer who shows up and says, I know he wasn't there, he didn't witness it, but he's there, he speaks to four witnesses, and he looks at the damage to the cars. And this was the only testimony. So Judge Moss's finding that there was an accident is clearly not erroneous based on this testimony and the police accident report. And his finding that he just didn't find the defendant credible when he says that he pulls up at the stop sign, sees nobody coming, and he was meaning to turn right, but he didn't, even though there was no accident, and yet he continues to go straight. I mean, these are findings of facts that are based on a testimony and a record, which is just clearly not erroneous, unless the panel has any. Oh, actually, I want to touch on one point. Counsel raises an issue with respect to the need for contemporaneous proof of causation, and he cites Pearl. I worked on Pearl. My office represented one of the plaintiffs in Pearl that was decided by the Court of Appeals. There's nothing in Pearl that says that you need a contemporaneous medical report that proves causation. The quote that he uses, that my adversary uses, talks about contemporaneous medical reports that may be used to prove causation, which simply means you have a patient who's injured. He goes to a doctor contemporaneous with the accident. A couple of months later, another doctor treats him, and he can look back at that treatment, and that treatment and that report may help in proving causation. Not that the treating doctor who treats the patient contemporaneous with the accident has to say in his medical report that I find these injuries to have been caused by a motor vehicle accident that occurred on March 6, 2010. There's nothing in Pearl that says that. And it's consistent with the public policies behind that portion of Pearl which says, look, we want doctors to be doctors. We don't want them to sit there and think about magical words that they have to put in the report to help somebody in litigation. So that's why Pearl says you don't need a contemporaneous range of motion testing. Just go see a doctor. Get your treatment, which is what plaintiff did here. And just because doctors at Davidson Medical didn't write in their reports, oh, and we find this limitation to have been proximately caused by a motor vehicle accident, doesn't non-suit him. That's not what Pearl says. Pearl doesn't require a contemporaneous report showing proof of medical causation. It just says that a report that's done contemporaneous with the accident may help in proving causation. Thank you. Thank you. We'll hear the rebuttal. Thank you, Your Honor. If I could just read, when asked about the X-ray, Dr. Raffey was asked, and certainly there was nothing in this X-ray taken approximately one month post-incident showing any trauma to the lumbar vertebra. Correct? Answer, correct. And then with respect to the MRI of April 22, 2010, Dr. Raffey said the soft tissue structures are labeled as normal and that there was no traumatic event to those soft tissue structures. With respect to the cessation, the plaintiff himself said, I don't want to waste anybody's time after those four months at Davidson. There was never any prescription medicine from the time of incident until Raffey got a hold of them. The stenosis is a narrowing. I don't know how a narrowing could be caused when, again, there was no impact to the car of significance, and Raffey never explained how a stenosis, which is a narrowing, there's no bony, as we just read, there's no bony impact whatsoever. However, Dr. Talaj, his general family doctor who sees him afterwards, notes he's doing every single activity with no restriction whatsoever, no prescriptions. Talaj, who has no ax to grind, who's got no involvement in the case, says he's fine, 100%. And yet before Raffey gets a hold of him, he's doing sit-ups, and after Raffey gets a hold of him, he's doing sit-ups, the most disproving fact of any lumbar impact or objective injury, sit-ups. Thank you. We'll reserve decision.